**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA

-vs-                                                                                      Case No.:  2:07-cr-95-FtM-34SPC

TODD CRISP
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Defendant Todd Crisp's Motion to Suppress Evidence (Doc. #27) filed on August 31, 2007. The Government filed its response (Doc. # 28) on September 14, 2007. A hearing was scheduled before the Honorable Sheri Polster Chappell, United States Magistrate Judge on October 2, 2007.

The Government was represented by AUSA Jesus Casas, and the Defendant was represented by David Brener. At that hearing, the Government called Officer Arturo Gonzalez as its witness and submitted a copy of the Fort Myers Police Department's (FMPD) General Order 24.8 (Gov't. Ex. # 1) establishing the FMPD's procedures for the towing of vehicles, a copy of Ofc. Gonzalez' Inventory Form (Gov't. Ex. # 2), a photo of the subject vehicle's back window (Gov't. Exhibit # 3), and a copy of the FMPD dispatcher's printout (Gov't. Ex. # 4). The Plaintiff called Shirley Lias as its only witness, and submitted a copy of Ofc. Gonzalez' Narrative Report filed with the FMPD (Def. Ex. # 1).

**Testimony and Evidence**

**Officer Arturo Gonzalez**: (Tr. 30-97).

Ofc. Gonzalez has served with the FMPD for eleven (11) to twelve (12) years. (Tr. 30:20-21). On May 4, 2004 Ofc. Gonzalez was serving in the FMPD's public housing unit. (Tr.30:22-25, 31:1). On that date at approximately 10:48 a.m. he observed a white van coming off Byrd Drive and headed west on Michigan Avenue. (Tr. 31:7-16). Ofc. Gonzalez noticed the van's back window was broken and missing a chunk of glass. (Tr. 31:17-21). Based upon his observations, Ofc. Gonzalez believed the van may have been stolen. (Tr. 31:22-24). Therefore, he ran a license check. (Tr. 31:22-25, 32:1-2). The license check on the van revealed the van had not been reported stolen, and was owned by Enterprise Car Rental (Enterprise). (Tr. 32:3-5). Ofc. Gonzalez subsequently ran a check on the Defendant and discovered his driver's license had been suspended. (Tr. 43:22-25, 44:1-4).

Ofc. Gonzalez followed the van from a distance of twenty (20) to thirty (30) feet. (Tr. 32:6-16). The van pulled into the back yard of a residence located on Michigan Avenue and came to an abrupt stop. (Tr.32:11-13). Ofc. Gonzalez testified that Todd Crisp, the Defendant, was driving the van. (Tr. 33:1-10). Ofc. Gonzalez recognized the Defendant as the driver of the van from previous police contacts. (Tr. 33:6-10).

Ofc. Gonzalez entered the property with his patrol car. (Tr. 33:22-24). He observed the Defendant exit the van and flee westbound towards Shoemaker Blvd. (Tr. 34:1-8). Ofc. Gonzalez did not run after the Defendant nor issue any commands or warnings for the Defendant to stop because he did not believe he had any reason to stop the Defendant at that point in time. (Tr. 34:7-12). However, Ofc. Gonzalez testified the Defendant's actions contributed to his initial belief the van

may have been stolen. (Tr. 34:13-17). Ofc. Gonzalez then had FMPD dispatch contact Enterprise to inquire if the Defendant's name was on the rental agreement. (Tr. 34:13-20). The Defendant was not part of the contract, therefore, Enterprise requested the return of the van. (Tr. 34:21-25). Enterprise informed FMPD that it was sending Andy's Towing to pick up the van. (Tr. 35:3-9).

While Ofc. Gonzalez was waiting for the tow truck to arrive, the Defendant's mother and another woman, Teroncia Powell, arrived on the scene. (Tr. 35:10-25, 36:1). Ofc. Gonzalez testified that Powell told him the last time she had seen the Defendant was in Tampa, Florida, on May 1, 2004. (Tr. 36:2-9). Powell further stated she left the Defendant in Tampa and did not know how he got the van or how the van got to the Michigan Avenue residence.(Tr. 36:4-7). Powell told Ofc. Gonzalez that she did not have the keys to the van and that she did not have the ability to move it. (Tr.36:10-14). Powell then left the scene and Ofc. Gonzalez continued to wait for Andy's Towing to remove the van. (Tr. 36:15-22).

Ofc. Gonzalez testified he believed that Crisp had abandoned the van. (Tr. 37:6-22). After receiving word from dispatch that Enterprise wanted its van returned, Ofc. Gonzalez conducted an inventory search. (Tr. 37:23-25, 38:1-7). Ofc. Gonzalez testified he conducted an inventory search of the van because he believed the Defendant had abandoned the van and Enterprise said it wanted its van back. (Tr. 37:23-25, 38:1-7 ). Ofc, Gonzalez waited nine (9) or ten (10) minutes and then searched the van. (Tr. 59:7-14). Ofc. Gonzalez also testified that he conducted the inventory search to limit his own civil liability so that any items of value such as jewelry, cash, or firearms, if found, would be accounted for. (Tr. 38:8-22). During the inventory search, Ofc. Gonzalez found a yellow coat, a black leather jacket, a pair of Reebok tennis shoes, a DVD, a pair of Timberland boots, and other miscellaneous clothing items. (Tr. 40:12-19). Ofc. Gonzalez also found a Rossi .38 caliber

revolver and ammunition. (Tr. 41:1-13). Ofc. Gonzalez documented the items he discovered in the van on a FMPD Inventory Form. (Tr. 41:6-9). He kept the revolver in his custody and turned it over to FMPD's evidence vault. (Tr. 41:13-16). He then returned the clothing items to the van. (Tr. 41:6-15).

Ofc. Gonzalez testified that an inventory search was required pursuant to FMPD's policy requiring an inventory search of an abandoned vehicle or vehicles that are going to be towed by an officer or at the owner's expense. (Tr. 47:5-17). Ofc. Gonzalez also discovered the Defendant did not have a valid driver's license. (Tr. 43:22-25). However, he was not aware of the suspended driver's license at the time he performed the inventory search. (Tr. 46:2-17). The Defendant never returned to the scene while Ofc. Gonzalez was present even though it took over an hour for the towing company to arrive and take the van. (Tr.48:7-25, 49:16-21).

Ofc. Gonzalez called Enterprise and spoke with Brad Zakowicz. (Tr. 49:10-13). Zakowicz told Ofc. Gonzalez that Powell had arranged for Alligator Towing to pick up the van and return it to Enterprise and that it was okay for him to turn over the van to Alligator. (Tr. 49:10-13). Ofc. Gonzalez was not aware that Powell had spoken to Enterprise nor that Powell had arranged for Alligator Towing to remove the vehicle prior to conducting the inventory search. (Tr. 85:7-19). Ofc. Gonzalez remained with the van until Alligator Towing came to remove it. (Tr. 48:7-15).

**Shirley Lias:** (Tr. 97-115).

Lias is the Defendant's mother. (Tr. 98:3-5). Lias testified that she was present at the scene on May 4, 2004. (Tr. 98:15-21). Lias acknowledged there were no lights or sirens used in the stop of the van. (Tr. 104:1-4). She could see Ofc. Gonzalez' patrol car in the yard. (Tr. 104). Lias owns several small businesses in the area and testified that she always takes an interest when FMPD makes

a stop in the neighborhood because of FMPD's past wrongdoings. (Tr.102:24-25, 103:1-5).

Lias testified that when she walked up to the scene, Ofc. Gonzalez asked "Where's Torry?" Torry is one of Lias' other sons. (Tr. 106:2-9). She accused Ofc. Gonzalez of messing with her son Torry. (Tr.106:2-9). Lias testified that she has four (4) sons who have had run-ins with the FMPD and that she was familiar with Ofc. Gonzalez . (Tr. 100:8-13). Lias testified that she was concerned because Ofc. Gonzalez had been harassing her son Todd and in fact had stopped him twenty (20) times in one month about tickets. (Tr. 106:14-17).

Lias then questioned Ofc. Gonzalez as to why he was on the Lewis' private property. (Tr. 99:22-25). She testified the van was parked in the back yard of the residence. There was a little gate there where an individual could enter and drive in. (Tr. 99:25, 100:1-2). She also stated the Defendant's grandmother lived nearby and suggested the Defendant had parked at the Lewis' residence to visit his grandmother on previous occasions. (Tr.111:1-11).

Lias stated that she was present for about ten (10) to fifteen (15) minutes, left, and later returned. (Tr. 114:4-15). Lias said she asked Ofc. Gonzalez why he was searching the van without a warrant and had not called Enterprise prior to searching the van. (Tr.99:14-20). Lias stated Officer Gonzalez searched the van prior to his contacting Enterprise. (Tr. 98:19-25, 99:1-20).

Lias testified that she was present when Ofc. Gonzalez searched the van and was present when Alligator Towing arrived to take the van back to Enterprise. (Tr. 98:19-21). After his search, Ofc. Gonzalez held up a gun in front of Lias and smiled and said "this [is] what I found, this [is] what I found." (Tr. 107:15-16, 108:11-14). Lias never observed the Defendant return to the scene. (Tr. 114:2-18).

**DISCUSSION**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. v Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). The Defendant argues Ofc. Gonzalez violated his Fourth Amendment right by illegally searching the van without a warrant, or his consent, with no exigent circumstances, or probable cause. The Defendant further argues the Government may not rely upon the inventory search exception. The Government argues the issue has already been decided in state court and this Court must give full faith and credit to the state court's decision denying the Motion to Suppress. The Government also argues the Defendant lacks standing to bring the Motion, or in the alternative, Ofc. Gonzalez acted within the scope of the FMPD's inventory search policy.

*(1) Full Faith and Credit*

The Full Faith and Credit Clause contained in the United States Constitution, Article IV, as implemented in by 28 U.S.C. § 1738, requires that federal courts afford the same full faith and credit to state court judgements that would be given by other courts of that state. Cataldo v. St. James Episcopal School, 213 Fed. Appx. 966, 967-968 (11th Cir. 2007) (citing Dean Whitter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S. Ct. 1238, 1243, 84 L. Ed 2d 158 (1982)).

The Government argues that Judge Thomas Reese, Circuit Court Judge for the Twentieth Judicial Circuit in and for Lee County, Florida, heard a motion to suppress on the same or similar testimony. The motion was denied. Therefore, the Government states, pursuant to the Full Faith and Credit Clause, the issue has been resolved and the Motion to Suppress before this Court should be denied.

The Government cites to <u>Curry v. Baker</u>, 802 F.2d 1302, 1310 (11th Cir. 1986), for its Full Faith and Credit argument. However, <u>Curry</u> involved a civil action pursuant to 42 U.S.C. § 1983 involving a dispute over the tabulation of illegal votes during the Alabama Democratic Primary election in June of 1986. Here, the Plaintiff faces criminal charges and the potential loss of his liberty. Neither the Government, the Defense, nor the Court has been able to find a Full Faith and Credit case binding the Federal Court in a criminal matter. Furthermore, Judge Reese's order does not state his rationale for denying the motion to suppress in the state court, instead the Order merely states the motion to suppress is denied.

After a review of the case law, the Court determined the Motion to Suppress should be heard on the merits. The Court reached that conclusion because there was no case law presented involving the Full Faith and Credit issue as it relates to criminal cases, Judge Reese provided no explanation as to why he denied the motion to suppress at the state court level, and the Defendant's liberty is at stake in this matter. The Court found, therefore, the Full Faith and Credit normally applied in civil judgments is not applicable in this instance.

### *(2) Whether the Defendant had Standing to Contest to the Search of the Van*

The Government argues the Defendant does not have standing to contest Ofc. Gonzalez' inventory search of the van. The Defendant argues that an individual's right to privacy applies to his use of a rental car. The Defendant did not testify at the hearing as to whether or not Powell gave him permission to use the van on May 4, 2007. According to Ofc. Gonzalez' testimony, Powell, the van's lessee, told him at the scene that she did not know how the van got to the Michigan Avenue residence. (Tr. 36:4-7). In fact, Powell told Ofc. Gonzalez the last time she saw the Defendant he

was in Tampa, Florida.[1] (Tr. 36:2-9). Nevertheless, the Defendant argues he had a privacy right to the van and that Ofc. Gonzalez violated the Fourth Amendment when he searched it.

In addressing the standing issue, the Defendant called the Defendant's mother to contradict Ofc. Gonzalez' testimony. Since the testimony of Ofc. Gonzalez and Lias are in conflict, the Court must first perform a credibility analysis to determine which testimony was the more credible before addressing the issue of standing.

*Credibility Analysis*

When weighing the credibility of witnesses, the Court does not look at the status of the witness, but rather the Court must weigh the testimonies of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand and the witnesses' interest in the outcome of the hearing. U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (11th Cir. 2002).

Lias said the Defendant would often park in the Lewis' back yard when he went to visit his grandmother so it would be normal for him to stop there. (Tr.111:1-11). According to Lias, Ofc. Gonzalez had stopped the Defendant twenty (20) times within one month for tickets. (Tr. 106:14-17). She indicated Gonzalez harassed her son.

Ofc. Gonzalez testified the Defendant fled the scene when he saw him approaching in his marked patrol vehicle. (Tr. 34:1-8). When Ofc. Gonzalez contacted Enterprise, they informed him,

---

[1] Powell later recanted her statement to Ofc. Gonzalez in a hearing held before the Honorable Thomas Reese, Circuit Judge for the Twentieth Judicial Circuit in and for Lee County. (Hearing Transcript on Motion to Suppress, December 19, 2007, Doc. # 32, p. 6). Powell testified in the State Court proceeding that she gave the Defendant permission to drive the van. (Hearing Transcript on Motion to Suppress, December 19, 2007, Doc. # 32, p. 6:6-11).

through FMPD dispatch, they wanted the van towed back to their lot. (Tr. 35:3-9). Ofc. Gonzalez testified that it was after Enterprise had stated they wanted the van back that the inventory search was performed.(Tr. 37:23-25, 38:1-7). Ofc. Gonzalez was at the scene for approximately one hour and the Defendant never returned to contest the inventory search or to claim his interest in the van. (Tr.48:7-25, 49:16-21).

Upon review of the testimony, the Court finds Ofc. Gonzalez' testimony to be more credible than Lias' testimony. None of the basic facts presented in Ofc. Gonzalez' testimony were disputed except for the fact that Ofc. Gonzalez had contacted Enterprise prior to searching the van. In her testimony Lias stated that Ofc. Gonzalez had not yet called Enterprise before he searched the van. (Tr. 99: 11-20). However, prior to making that statement Lias testified that she could not remember whether or not Ofc. Gonzalez had communicated with FMPD dispatch because it was 2004 and she could not remember all of the details. (Tr. 99:8-18).

Lias further waffled in her testimony regarding the moment when Ofc. Gonzalez actually searched the van. When asked if she was present when Alligator Towing arrived, Lias answered yes. (Tr. 100:17-19). Lias was then asked if Ofc. Gonzalez searched the van after Alligator Towing arrived. (Tr. 100:17-19). Lias answered "no sir." (Tr. 100:20-22 ). At this point, the Defense Counsel inquired further asking Lias did she state "yes or no?" (Tr. 100:22). The Government objected to the yes or no question stating "I believe the witness answered the question." (Tr. 100:23-24). The Defense Counsel then addressed the Court and said he believed the Witness was mistaken. (Tr. 100: 25). The Court informed Defense Counsel that he must take the answers as they come. (Tr. 101:2-4). Thereafter, Lias changed her statement and said "[w]ell he searched the car before Alligator Towing got there." (Tr. 101:8-9).

Lias initially testified the van was in the back of the residence by a little gate. (Tr. 100:1-2). She suggested the Defendant often parked behind the Lewis' to visit his grandmother whose residence was located nearby. (Tr.111:1-11). Yet, she contradicted that later in her testimony, she stated the van was parked in the Lewis' driveway. (Tr.110:3-10).

Lias stated Ofc. Gonzalez had stopped the Defendant twenty (20) times in one month to ticket him. (Tr. 106:14-17). It was clear from the testimony of Ofc. Gonzalez the Defendant did not have a valid driver's license. (Tr. 43:22-25, 44:1-4). It is incredulous to believe that if Ofc. Gonzalez had stopped the Defendant twenty (20) times in one month, that he would not have arrested or ticketed him for driving on a suspended license. Furthermore, Lias is the Defendant's mother and has a strong interest in her son's liberty. Thus, based upon the conflicts and waffling in her testimony and her strong interest in the Defendant's liberty, the Court finds that Ofc Gonzalez' testimony was more credible than Lias' testimony.

Having found Ofc. Gonzalez' testimony credible, the Court will accept as true that Enterprise had already informed Ofc. Gonzalez the van was to be towed back to their lot prior to his performing an inventory search of the van. It is irrelevant that Andy's Towing, the original towing company referred by Enterprise, did not actually tow the van and that Alligator Towing called by Powell actually did. What is relevant is what Ofc. Gonzalez believed when he performed the inventory search of the van.

### *Defendant's Standing*

To have standing to challenge a search, one must manifest (1) a subjective expectation of privacy in the invaded area, and (2) society must be prepared to recognize that expectation as objectively reasonable. U.S. v Bell, 218 Fed. Appx. 885, (11th Cir. 2007)(citing U.S. v Miravalles,

280 F.3d 1328, 1331 (11th Cir. 2002)); Rakas v Illinois, 439 U.S. 128, 143 n. 12, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). "The individual's expectation of privacy viewed objectively [must be] justifiable under the circumstances." U.S. v. Cooper, 133 F. 3d 1394, 1398 (11th Cir. 1998). "The individual challenging the search bears the burdens of proof and persuasion." Id. Although fact-specific, case law has established some general boundaries as to what society will accept as reasonable regarding privacy in a motor vehicle. A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it. Rakas, 439 U.S. at 130; U.S. v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir.1995). On the other hand, a driver using a vehicle with the permission of an absent owner, has been found to possess a reasonable expectation of privacy therein. Cooper, 133 F.3d at 1398 (citing U. S. v. Garcia, 897 F.2d 1413, 1416-18 (7th Cir.1990)).

Giving the Defendant the benefit of the doubt and allowing that Powell had given him permission to drive the van on that day, the Defendant abandoned the vehicle at the residence when he ran off. As such, it is not unreasonable to conclude the Defendant does not have standing because he no longer had a reasonable expectation of privacy in the van. Even if the Court were to allow that the Defendant had a reasonable right to privacy, therefore standing to contest the inventory search, the Defendant's argument still fails on the merits.

### (3) Whether the Inventory Search was Valid

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobile's contents. South Dakota v. Opperman, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). Inventory searches constitute one of the well-defined exceptions to the probable cause and warrant requirements of the Fourth Amendment. Id.; Illinois v.

Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L. Ed. 2d 1000 (1983).  Inventory searches were developed to respond to three distinct needs: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. Opperman,428 U.S. at 369.

The Defendant argues  FMPD's inventory search policy does not support Ofc. Gonzalez' position.  The Defendant refers to FMPD General Order 24.8 § IX(I)(4), to support his position that Ofc. Gonzalez did not have the authority to inventory the vehicle pursuant to FMPD policy.  The General Order subsection 4 reads in pertinent part, "[t]he vehicle is being towed from any location, or is being driven by any law enforcement officer, for the purpose of an ongoing criminal investigation." (Gov't. Ex. 1, p. 7).   The Defendant argues that since there was not an ongoing criminal investigation, Ofc. Gonzalez did not have the right to conduct the inventory search.   As such,  according to the Defendant, Ofc. Gonzalez' inventory search of the van was illegal.

Ofc. Gonzalez testified that he performed an inventory search pursuant to FMPD policy to protect himself from civil liability.  He testified the inventory search was not performed until after Enterprise had informed him they wanted the van towed.  Ofc. Gonzalez further testified that he believed the Defendant had abandoned the van when he ran from the scene. (Tr. 37:6-22).  Thus, Ofc. Gonzalez concluded the van was in his custody until the towing company arrived to take possession of the van for Enterprise.  It was, therefore, reasonable for Ofc. Gonzalez to conclude that an inventory search was necessary under FMPD policy to protect himself from civil liability. *See* Opperman, 428 U.S. at 369 (holding inventory searches can be used as protection of the police

against claims or disputes over lost or stolen property). As such, the motion to suppress should be denied.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Defendant Todd Crisp's Motion to Suppress Evidence (Doc. #27) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this _____ day of October, 2007.

Copies: All Parties of Record