# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.  2:07-cr-95-FtM-34SPC

TODD D. CRISP

_____/

## O R D E R

**THIS CAUSE** is before the Court on the Motion to Suppress Physical Evidence and Statements of Defendant (Dkt. No. 27; Motion to Suppress), filed on August 31, 2007.  In the Motion to Suppress, Defendant alleges that the vehicle that he was driving on May 4, 2004, was illegally stopped[1] and searched, and he asks the Court to suppress the gun and ammunition found in the vehicle as well as the evidence found on the gun and the results of a fingerprint comparison.  See id. at 1. The government opposes Defendant's requests. See United States' Response to Defendant's Motion to Suppress (Dkt. No. 28; Opposition). The Motion to Suppress was referred to the Honorable Sheri Polster Chappell to conduct an evidentiary hearing and recommend an appropriate resolution.

The Magistrate Judge held an evidentiary hearing on October 2, 2007.  See Transcript of Motion to Suppress (Dkt. No. 39; Tr.).  At the evidentiary hearing, two witnesses testified: Officer Arturo Gonzalez, Jr.  (Gonzalez) and Shirley Lias (Lias). See Tr.

---

[1]        Defendant has abandoned the argument that the vehicle was illegally stopped; therefore, the Court need not address that assertion.  See Defendant's Objections to Findings of Fact, Conclusions of Law, and Recommendation of Denial of Defendant's Motion to Suppress Evidence (Dkt. No. 41; Objections) ¶ 3; Transcript of Motion to Suppress (Dkt. No. 39; Tr.) at 3, 119-20.  Additionally, at the hearing before the Magistrate Judge, counsel for Defendant indicated that Defendant was withdrawing the motion to the extent it seeks to suppress any statements made by him.  See Tr. at 3.  Therefore, the only remaining assertion in the Motion to Suppress is that the search of the vehicle was unlawful. See Objections ¶ 4.

at 30, 97.  In addition, several exhibits were received into evidence, including the Fort Myers

Police Department General Order 24.8, Fort Myers Police Department Inventory and Hold

Form, Transcript of Taped Proceedings Motion to Suppress (Dec. 19th Tr.), and Transcript

of Taped Proceedings Amended Motion to Suppress (Dec. 27th Tr.).[2] See Exhibit List (Dkt.

No. 34); Exhibit List (Dkt. No. 35); Tr. at 28-30.

Subsequent to the evidentiary hearing, on November 1, 2007, the Magistrate Judge

entered a Report and Recommendation (Dkt. No. 40; R&R) recommending that the Motion

to Suppress be denied.  See R&R at 13.  Defendant then filed objections to the factual

findings and legal conclusions in the R&R as well as the recommended disposition of the

Motion to Suppress.  See Defendant's Objections to Findings of Fact, Conclusions of Law,

and Recommendation of Denial of Defendant's Motion to Suppress Evidence (Dkt. No. 41;

Objections).  The government responded to the Objections.  See United States' Response

to Defendant's Objections to Findings of Fact, Conclusions of Law, and Recommendation

of Denial of Defendant's Motion to Suppress Evidence (Dkt. No. 42; Response).  Therefore,

this matter is now ripe for the Court's review.

---

[2]        Defendant was initially charged in state court with violations of state law arising out of the conduct at issue in this case.  During those proceedings, Defendant filed two motions to suppress, which were denied.  While the undersigned agrees with and accepts the Magistrate Judge's conclusion that the state court judge's rulings do not preclude the re-litigation of the Motion to Suppress in this Court or control the outcome of this matter, see United States v. Perchitti, 955 F.2d 674, 675, 677 (11th Cir. 1992); see also Quinn v. Monroe County, 330 F.3d 1320, 1329-30, 1332 (11th Cir. 2003); Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994), that finding does not render the state court proceedings irrelevant. Indeed, during the evidentiary hearing before the Magistrate Judge, the parties stipulated to the introduction into evidence of the transcripts of the state court proceedings and agreed that the testimony memorialized in these transcripts could be used in resolving the pending Motion to Suppress.  See Tr. at 3, 5, 18, 29-30. Based on this agreement by the parties, the Court will consider the testimony set forth in the transcripts in resolving this Motion.

-2-

## I.    Relevant Facts[3]

On May 4, 2004, Defendant Todd D. Crisp, whose driver's license had been revoked[4] for five years because he was habitual traffic offender, was driving a van, rented by his girlfriend, Tyroncia Powell (Powell), from Enterprise Rent-a-Car (Enterprise).  See Tr. at 31, 33, 35-36, 44, 46; Dec. 19th Tr. at 10; Dec. 27th Tr. at 5, 8; Govt's Ex. 4.  Powell testified that she had given Defendant permission to use the van, even though she knew that he did not have a valid driver's license.   See Tr. at 76; Dec. 19th Tr. at 6, 8.  Additionally, both Powell and Defendant knew that Defendant was not authorized by Enterprise to drive the van, see Dec. 19th Tr. at 8; Dec. 27th Tr. at 8, and Powell testified that she knew that it would not have been possible to include Defendant as an authorized driver on the contract because he did not have a valid driver's license.[5]   See Dec. 19th Tr. at 8.  Similarly,

---

[3]      The Magistrate Judge sets forth specific factual findings in the R&R, including a credibility determination. See R&R at 2-5, 8-10. In his Objections, Defendant does not challenge the Magistrate Judge's credibility determination or contend that any of the factual findings are erroneous. See Objections at 1-2. While Defendant does challenge the Magistrate Judge's conclusion that Defendant abandoned the vehicle after parking it at a private residence and assert that the Magistrate Judge should have considered additional facts when making that determination, see id. ¶¶ 5, 8-9, the Court need not consider the validity of those objections, as it finds that Defendant **never** had a legally cognizable expectation of privacy in the vehicle and, therefore, does not reach the issue of abandonment. Additionally, the Defendant's general assertion that he "objects to the findings of fact, conclusions of law, and recommendation of the Magistrate-Judge," id. ¶ 12, is too vague for the Court to determine which findings Defendant is challenging and insufficient to warrant specific consideration by the undersigned pursuant to 28 U.S.C. § 636(b), see Macort v. Prem, Inc., No. 06-12316, 208 Fed. Appx. 781, 783-84 (11th Cir. Nov. 30, 2006) (per curiam). Therefore, upon independent review of the factual findings and given that Defendant has not asserted that any of the factual findings are erroneous, the Court accepts the Magistrate Judge's factual findings contained in the R&R, except for the conclusion that Defendant abandoned the vehicle, to the extent that they are consistent with this Order.

[4]      While Gonzalez testified that Defendant's license had been suspended and counsel for Defendant conceded that fact during the hearing before the Magistrate Judge, see Tr. at 19, 22, 44, 120, it appears that Defendant's license was actually revoked for five years, see Govt's Ex. 4.

[5]      Indeed, a representative from Enterprise testified at the first state court hearing that an individual without a valid driver's license cannot obtain permission to drive an Enterprise rental car or be identified as a driver on the contract. See Dec. 19th Tr. at 11. The representative also testified that Powell rented the vehicle at issue from May 1, 2004, to May 4, 2004, and that there were no other authorized drivers. See id. at 10-11.

Defendant knew that he was not supposed to be driving the vehicle.  See Dec. 27th Tr. at 8.

While on routine patrol in his marked police vehicle, Gonzalez noticed a van with a broken back window (a large piece of glass was missing) when it turned in front of him.  See Tr. at 31, 41, 50.  At that point, Gonzalez ran a license plate check and learned that the vehicle was owned by Enterprise.  See id. at 31-32.  Gonzalez decided to follow the van because these circumstances aroused his suspicions.  See id. at 32, 34.  He followed the van for about a block when it abruptly turned into the backyard of a residence and stopped.[6]  See id. at 32, 34, 50, 53.  The driver, whom Gonzalez recognized as the Defendant based on their prior contacts, got out of the van and fled in a westward direction, turning back once to look in the direction of Gonzalez.  See id. at 33-34, 52; see also Dec. 27th Tr. at 5-6.  Prior to Defendant's exit from the vehicle, Gonzalez had not been able to identify the driver.  See Tr. at 50.  Gonzalez did not attempt to stop Defendant at any time, nor did he chase after him, as he had no reason to do so.  See id. at 34, 50, 53; see also Dec. 27th Tr. at 6.  Instead, Gonzalez turned his attention to the van.  See Tr. at 53-54.

When Defendant exited the van, he closed all of the doors, but left the driver's window rolled down.  See id. at 55; Dec. 27th Tr. at 7.  Gonzalez could not remember whether Defendant locked the doors before he left.  See Tr. at 54.  However, Defendant did not leave behind the keys to the van.  See id. at 36, 54.  Gonzalez accessed the vehicle

---

[6]        According to Defendant's mother, Lias, there is a fence around the house and a gate to drive into the backyard of the residence.  See Tr. at 100.  The gate is always open.  See id. at 109.

through the open driver's window and, upon inspection, determined that the van did not appear to be stolen as the ignition and steering column were intact. See id. at 54-55, 62.

Before inspecting the van, Gonzalez asked the dispatcher to contact Enterprise to determine whether Defendant was an authorized driver of the vehicle, inform them of the broken window and that Defendant had fled, and inquire as to what they wanted to do with the vehicle. See id. at 34, 53-54, 57-60. The dispatcher then informed Gonzalez that Enterprise said Defendant was not an authorized driver and it was sending a tow truck to pick up the vehicle. See id. at 34-35, 56-57. At that point in time, after about nine to ten minutes had passed since Defendant exited the vehicle, Gonzalez decided to conduct an inventory search of the vehicle, which he believed had been abandoned by Defendant. See id. at 37-38, 58. During the inventory search, Gonzalez found a gun in the pocket of a yellow Sean John coat. See id. at 38-41. Gonzalez took possession of the gun and returned the other items he had located to the van. See id. at 41. After the search of the van, Gonzalez learned that Defendant's license had been revoked for being a habitual traffic offender. See id. at 43-46; Gov't's Ex. 4.

Gonzalez testified that, while he was awaiting the tow truck, Powell arrived at the residence and told him that she had rented the van from Enterprise on May 1, 2004, she and Defendant had driven to Tampa, where she left Defendant, and she did not know how the vehicle arrived at the location where it was parked as she had left it in her driveway and the keys at the house. See Tr. at 35-36. Additionally, in the state court proceedings, Gonzalez testified that Powell told him that Defendant was supposed to be in Tampa and she did not

mention that she had given Defendant permission to use the vehicle.  <u>See</u> Dec. 27th Tr. at 14.[7]

Ultimately, the van was towed from the residence, by a tow truck arranged for by Powell with the express approval of Enterprise, and returned to Enterprise.  <u>See</u> Tr. at 48-49, 64-65, 85, 92.  Gonzalez took the gun to the police department and placed it in the evidence vault.  <u>See</u> <u>id.</u> at 81.

## II.    Analysis

Although the Motion to Suppress and Objections raise numerous issues relating to the unreasonableness of the search of the van, the Court must first consider a preliminary issue – whether Defendant had a legitimate expectation of privacy in the van or "standing"[8]

---

[7]       The record discloses a discrepancy in the testimony regarding whether Powell had given Defendant permission to use the vehicle, <u>compare</u> Dec. 19th Tr. at 6 <u>with</u> Tr. at 35-36; Dec. 27th Tr. at 14; however, it is not dispositive.  Even if Powell had agreed to allow Defendant to use the vehicle, which the government concedes, <u>see</u> Tr. at 121, the undersigned finds, as explained <u>infra</u>, that Defendant still did not have a reasonable expectation of privacy in it, based on consideration of all of the circumstances presented, including the fact that he was an **unlicensed** and unauthorized driver.  Consequently, despite Defendant's suggestion to the contrary, <u>see</u> Objections ¶ 6, there is no need for a credibility determination to be made regarding this inconsistent testimony.

[8]       While this issue has been phrased as one of "standing," the Court notes that in <u>Rakas v. Illinois</u>, the United States Supreme Court found that there is no theoretically distinct concept of standing when determining whether a defendant should be permitted to challenge a search.  <u>See</u> 439 U.S. 128, 133, 139-40 (1978).  Instead, the question is subsumed in the determination of the merits of the Fourth Amendment claim. <u>See</u> <u>id.</u> at 139-40.  Thus, the issue is "whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it."  <u>Id.</u> at 140.  The Supreme Court recognized that this "inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect."  <u>Id.</u>  The Supreme Court later restated the operative inquiry as: "whether government officials violated any legitimate expectation of privacy held by [the defendant]."  <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 106 (1980).  Thus, a defendant bears the burden of proving that the search was illegal and that he or she had a legitimate expectation of privacy in the area searched.  <u>See</u> <u>id.</u> at 105.  Justice Harry Blackmun, in a concurring opinion, recognized that the court may consider whether a defendant had a legitimate expectation of privacy in the area searched separately from the determination of whether the Fourth Amendment was violated.  <u>See</u> <u>id.</u> at 112 (Blackmun, J., concurring).   In this case, the Court first considers whether Defendant had a legitimate expectation of privacy in the van, because, if Defendant did not have a legitimate expectation of privacy, there is no need to consider whether the search violated the Fourth Amendment.  <u>See</u> <u>Minnesota v. Carter</u>, 525 U.S. 83, 91 (1998).

to challenge the search of the van.[9]  The government asserts that Defendant did not have

an objectively reasonable expectation of privacy in the vehicle because Defendant

abandoned the vehicle and Enterprise sought to repossess it.  See Opposition at 5-7;

Response at 2-3.  Defendant, on the other hand, contends that he had a reasonable

expectation of privacy in the vehicle  because he had permission from Powell, the lessee,

to use the van; he was the operator of the van; and he did not abandon the vehicle or his

expectation of privacy in it.  See Motion to Suppress at 6; Tr. at 18-23.[10]

## A.    Applicable Law

In order to assert a violation of the Fourth Amendment, a defendant must establish

that he or she had a legitimate expectation of privacy in the place that was searched or that

his or her Fourth Amendment rights were violated.  See Rakas v. Illinois, 439 U.S. 128, 148-

---

[9]       Defendant had notice that the government was challenging his ability to object to the search of the vehicle and that he needed to put on proof that his Fourth Amendment rights were violated.  See Rakas, 439 U.S. at 130 n.1.  Indeed, the Magistrate Judge specifically told Defendant that he needed to establish standing and Defendant appeared to recognize his obligation to do so as he presented a lengthy argument in support of his assertion that he had a legitimate expectation of privacy in the vehicle.  See Tr. at 11, 17-23, 26, 128-31.  Moreover, counsel developed testimony in the evidentiary hearing before the Magistrate Judge that related to Defendant's legitimate expectation of privacy.  While the government focused its argument on the assertion that Defendant abandoned his reasonable expectation of privacy in the vehicle, Defendant was not relieved of his burden to establish the existence of a reasonable expectation of privacy in the first place.  See Carter, 525 U.S. at 88 ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . .").  Indeed, the United States Supreme Court and the Eleventh Circuit have concluded that this finding is a necessary prerequisite before the Court can apply the exclusionary rule.  See United States v. Salvucci, 448 U.S. 83, 86 (1980) (recognizing the Court's long-standing position "that remedies for violations of constitutional rights would only be afforded to a person who 'belongs to the class for whose sake the constitutional protection is given'"); Rakas, 439 U.S. at 138 (Fourth amendment rights "'may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'"); United States v. Bachner, 706 F.2d 1121, 1125, 1127-28 (11th Cir. 1983); United States v. Vicknair, 610 F.2d 372, 377 (5th Cir. 1980).

[10]       Although both parties presented lengthy arguments regarding whether Defendant abandoned his expectation of privacy in the vehicle, it would be premature to consider those arguments.  Before reaching that issue, the Court must conclude that Defendant **had** a legitimate expectation of privacy in the van in the first place.  As explained infra, this threshold inquiry has not been satisfied; thus, the Court need not consider the validity of the search any further.

49 (1978); United States v. Brazel, 102 F.3d 1120, 1147-48 (11th Cir. 1997).  The reason for such a requirement is that "'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" Rakas, 439 U.S. at 133-34 (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)); see also Minnesota v. Carter, 525 U.S. 83, 88 (1998); United States v. Padilla, 508 U.S. 77, 81 (1993) (per curiam) (finding that "[i]t has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure" (emphasis in original)).  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  Rakas, 439 U.S. at 134.

A defendant's legitimate expectation of privacy exists when he or she can show a subjective expectation of privacy that "'society is prepared to recognize as "reasonable."'" United States v. Ford, 34 F.3d 992, 995 (11th Cir. 1994) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)); see also Carter, 525 U.S. at 88; United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998); United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995).  Thus, the determination of whether an individual has a legitimate expectation of privacy in the property requires a careful analysis of the facts of the particular case and the individual's expectation must be justifiable under the circumstances.  See Rakas, 439 U.S. at 142-48; Cooper, 133 F.3d at 1398; see also United States v. Briones-Garza, 680 F.2d 417, 421 (5th Cir. 1982).  It may require more than a mere legitimate

presence at the place searched or "a subjective expectation of not being discovered."

Rakas, 439 U.S. at 143 & n.12, 148; Carter, 525 U.S. at 90-91.  Indeed, the United States

Supreme Court has recognized:

> "The test of legitimacy is not whether the individual chooses to conceal
> assertedly 'private' activity.  Rather, the correct inquiry is whether the
> government's intrusion infringes upon the personal and societal values
> protected by the Fourth Amendment."

Ford, 34 F.3d at 995-96 (quoting Oliver v. United States, 466 U.S. 170, 182-83 (1984)).

The Supreme Court has opined that "[l]egitimation of expectations of privacy by law

must have a source outside of the Fourth Amendment, either by reference to concepts of

real or personal property law or to understandings that are recognized and permitted by

society." Rakas, 439 U.S. at 143 n.12.  However, "'arcane' concepts of property law do not

control an individual's ability to claim Fourth Amendment protection."  United States v.

Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994).  Thus, property ownership or residence will

not automatically establish a legitimate expectation of privacy in the premises, but they are

factors to be considered.  See United States v. Salvucci, 448 U.S. 83, 91 (1980); Briones-

Garza, 680 F.2d at 421; see also Shamaeizadeh v. Cunigan, 338 F.3d 535, 544 (6th Cir.

2003); Ramos, 12 F.3d at 1023; United States v. Dyar, 574 F.2d 1385, 1390 (5th Cir.

1978).[11]  Additionally, the mere possession of a key to the premises is not sufficient to

establish a legitimate expectation of privacy.  See United States v. Chaves, 169 F.3d 687,

691 (11th Cir. 1999); United States v. Baron-Montilla, 743 F.2d 868, 870 (11th Cir. 1984)

(per curiam).  Likewise, the fact that an individual was the target of the search is not

---

[11]     This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding
precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

sufficient to allow that individual to challenge the lawfulness of the search. See Rakas, 439 U.S. at 138. Moreover, an individual who is wrongfully on the premises has no legitimate expectation of privacy therein. See id. at 141 & n.9.

The Eleventh Circuit has recognized a number of factors that are relevant to the determination of whether a defendant has a legitimate expectation of privacy in the premises. See United States v. Brown, 743 F.2d 1505, 1507 (11th Cir. 1984) (per curiam); United States v. Haydel, 649 F.2d 1152, 1154-55 (5th Cir. Unit A July 1981), modified, in part, on other grounds, 664 F.2d 84, 85 (5th Cir. Unit A Dec. 1981). For example, the right to exclude others is one important factor. See Brown, 743 F.2d at 1507. Other factors to be considered when determining whether a defendant can challenge the reasonableness of a search or seizure include: (1) "whether the defendant has a possessory interest in the thing seized or the place searched"; (2) "whether [the defendant] has exhibited a subjective expectation that [the property] would remain free from governmental invasion"; (3) "whether [the defendant] took normal precautions to maintain his [or her] privacy"; and (4) whether [the defendant] was legitimately on the premises." Haydel, 649 F.2d at 1154-55; see also Shamaeizadeh, 338 F.3d at 544-45.

**B.     Discussion**

In this case, Defendant contends that he has a legitimate expectation of privacy in the van, because he was driving the vehicle with the permission of Powell, the lessee and authorized driver, and despite the fact that he did not have a valid driver's license and was not authorized to drive the van by the owner, Enterprise. See Tr. at 18-19, 23, 26, 131. The Court first considers whether Defendant has met his burden of establishing that he had a

subjective expectation of privacy in the vehicle.  See Rakas, 439 U.S. at 130 n.1; Cooper, 133 F.3d at 1398.

### 1.    Whether Defendant Had a Subjective Expectation of Privacy

While Defendant testified in the state court hearing that he was the driver of the van and that he had received permission to use the vehicle from Powell, he did not testify that he had any expectation of privacy in the vehicle or that he believed that the vehicle or its contents would be undisturbed.  See Dec. 27th Tr. at 5-8.  Additionally, he did not state when Powell gave him permission to use the vehicle, for what purpose, or how long he had possession of the vehicle.  See id.  Defendant did not testify that he locked the doors after parking the vehicle at the private residence or that he took the keys with him.  See id. Further, Defendant left the driver's side window down and the vehicle had a large piece of glass missing from the back window.  See Tr. at 31, 54-55.  Numerous personal belongings were in plain view, and there is no testimony that these belonged to Defendant.  See id. at 38-40; Dec. 27th Tr. at 5-8.  On the other hand, Defendant did testify that, after parking the van at a private residence, he shut the car doors, and that he never gave Gonzalez consent to search the vehicle.  See Dec. 27th Tr. at 5-7.  The residence was fenced with a gate in the back, although the gate was never closed.  See Tr. at 99-100, 102, 109.  Gonzalez assumed that Defendant took the keys with him, as Powell said that she did not have the keys, the keys were not in the van, and the steering column and ignition appeared to be intact.  See id. at 36, 54.

Upon consideration of these facts, it is not entirely clear that Defendant has shown that he had a subjective expectation that the vehicle would remain free from government

intrusion.  However, for purposes of this analysis, the Court will assume, without deciding, that Defendant has satisfied this initial threshold, in light of the fact that he parked the vehicle in the backyard of a private residence; he closed the doors; apparently took the keys to the vehicle with him; and left the area.

### 2.    Whether Defendant's Expectation of Privacy Was Reasonable

Even if Defendant had a subjective expectation of privacy in the vehicle, that finding alone does not allow him to contest the search of the vehicle.  Defendant also must establish that society is prepared to recognize his expectation of privacy as reasonable.  See Ford, 34 F.3d at 995.  In determining whether an individual's subjective expectation of privacy is one that society will recognize, the Court considers the type of premises searched and the traditional and well recognized expectations of privacy in such a place.  See Carter, 525 U.S. at 101 (Kennedy, J., concurring).  The Court also considers factors such as whether Defendant had the right to exclude others, was legitimately present in the location, took normal precautions to protect his privacy, and had a possessory interest in the place searched.  See Haydel, 649 F.2d at 1155.

As an initial matter, the Court notes that it is well settled that individuals have a lesser expectation of privacy in an automobile.  See United States v. Vicknair, 610 F.2d 372, 380 (5th Cir. 1980).  Additionally, there are two facts present in this case that weigh heavily in determining whether Defendant's expectation that the van would be free from government intrusion is reasonable – (1) that Defendant was an unauthorized driver of the rental car and (2) that he did not possess a valid driver's license.

### a.    Unauthorized Driver

The issue of whether an unauthorized driver of rental vehicle can challenge a search of the vehicle has not been decided by the Eleventh Circuit.  In fact, in two separate opinions – one dealing with an overdue rental car and the other a car driven with the permission of the owner, the court specifically distinguished the facts in those cases from one involving an unauthorized driver of a rental vehicle and made it clear that it was not commenting on whether such an individual likewise could challenge the search of the vehicle.[12]  See Cooper, 133 F.3d at 1400; United States v. Miller, 821 F.2d 546, 548 (11th Cir. 1987).

In Cooper, the court concluded that a driver of an overdue rental vehicle had a legitimate expectation of privacy in the vehicle.  See 133 F.3d at 1402. In reaching that decision, the court specifically found that a holdover lessee was not analogous to an unauthorized driver.[13]  See id. at 1400.  The court's conclusion that the driver of the vehicle had a reasonable expectation of privacy in the overdue rental vehicle was based, in part, on the fact that the driver had paid all of the rental charges in full and the driver and the rental car agency were in privity of contract (even if the contract had been breached).  See id. Moreover, the court expressed concern with allowing a rental car company's "dormant right of repossession" to govern the existence and scope of an individual's Fourth Amendment

---

[12]    Thus, to the extent Defendant contends that either of these opinions support the conclusion, in this case, that Defendant had a legitimate expectation of privacy in the van, see Tr. at 19-20, 28, those assertions are without merit.

[13]    In doing so, the court mentioned that the Fifth Circuit had found that a driver of a vehicle, with permission of the absent renter, could challenge the search.  See Cooper, 133 F.3d at 1398 & n.9.  However, as discussed infra, that case, United States v. Kye Soo Lee, 898 F.2d 1034, 1038 (5th Cir. 1990), has been limited to its facts and is distinguishable from this case because there was no discussion of the rental agreement or whether other drivers were precluded from operating the vehicle.  See United States v. Seeley, 331 F.3d 471, 472 n.1 (5th Cir. 2003) (per curiam).

rights.  See id. at 1401.  Specifically, the court indicated that, "[i]f we were to accept the government's position, a driver could not expect privacy in a rental car even one minute after the rental contract expired."  Id.  Thus, in Cooper, the individual before the court had an undisputed legitimate expectation of privacy in the vehicle when he rented it, and the issue presented was whether the driver **lost** that expectation of privacy when the rental agreement expired.  See id. at 1401-02.  In contrast, in this case, the question presented is whether Defendant **ever** had a legitimate expectation of privacy in the vehicle.  This fundamental distinction makes the analysis in Cooper inapplicable.

The analysis in Miller likewise is inapplicable.  Although the Eleventh Circuit in Miller held that an individual has a legitimate expectation of privacy in a vehicle borrowed with permission of the absent owner, the court specifically recognized:

> Without deciding whether, in this circuit, the [driver of a vehicle rented to an absent third party] would have had standing, we think that the appellant in this case **had a far clearer expectation of privacy** in the borrowed car than does a driver in [that] situation.

821 F.2d at 548 (emphasis added).  Thus, the court declined to comment on whether it would find that an unauthorized driver of a rented vehicle has a legitimate expectation of privacy in the vehicle.  However, in concluding that the defendant had a reasonable expectation of privacy, the court expressed concern that a contrary holding "would mean that a perfectly innocent citizen who, say, borrowed a neighbor's car with permission, would not have standing to challenge a search of that car."  Id. at 548 n.2.  Certainly, this concern is not present in this case as Enterprise, the owner of the vehicle, did not give Defendant permission to operate the vehicle, nor would it have done so, see Dec. 19th Tr. at 10-11, and both Defendant and Powell knew Defendant was not permitted to drive the van, see

Dec. 19th Tr. at 8; Dec. 27th Tr. at 8.  Thus, the <u>Miller</u> decision does not control the outcome of this case.

While the Eleventh Circuit has remained silent on the issue before this Court,[14] several other circuit courts of appeal have issued decisions considering whether an unauthorized driver of a rented vehicle can challenge a search of that vehicle.  Indeed, the Fourth, Fifth,[15] Sixth, and Tenth Circuit Courts of Appeal have recognized that, as a general proposition, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, even though he or she received permission from the lessee to operate it.  <u>See</u> <u>United States v. Seeley</u>, 331 F.3d 471, 472 (5th  Cir. 2003) (per curiam);

---

[14]     The district courts within the Eleventh Circuit appear to be split.  <u>Compare</u> <u>United States v. United States Currency Totaling $101,270.00</u>, No. CV 101-162, 2007 WL 4106262, at *5 (S.D. Ga. Nov. 16, 2007) (concluding that "an unauthorized driver of a rental car has no legitimate expectation of privacy in the rental car") <u>with</u> <u>United States v. Virden</u>, 417 F. Supp. 2d 1360, 1368 n.8 (M.D. Ga. 2006) (finding, in a footnote, that the defendant had a reasonable expectation of privacy in the car, even though he was an unauthorized driver, because the car was procured for him and the lessee gave the defendant permission to use the vehicle).  Neither of these cases contain an in-depth analysis of whether society would recognize an unauthorized driver's expectation of privacy as reasonable.  Additionally, although the <u>Virden</u> decision was affirmed by the Eleventh Circuit, the Eleventh Circuit did not consider the issue of whether the defendant had standing to challenge the search of the car.  <u>See</u> <u>United States v. Virden</u>, 488 F.3d 1317, 1320-21 (11th Cir. 2007).  Additionally, there is no indication that either of these cases involved an <u>unlicensed</u> driver, as in the instant case.

[15]     While, as mentioned <u>supra</u>, the Fifth Circuit Court of Appeals in <u>Kye Soo Lee</u> seemed to suggest that an individual who is operating a vehicle with permission of the renter can challenge the search of the vehicle, that decision has been limited to its facts, including that the terms of the rental agreement were not discussed or addressed and there was no evidence that the rental agreement limited the persons who were permitted to drive the vehicle.  <u>See</u> <u>Seeley</u>, 331 F.3d at 472 n.1; <u>United States v. Dortch</u>, 199 F.3d 193, 205 (5th Cir. 1999) (Garwood, J., dissenting).  In this case, while the rental agreement was not provided to this Court, the transcript of the state court hearing reflects that a representative from Enterprise testified that Defendant was not and could not be an authorized driver.  <u>See</u> Dec. 19th Tr. at 10-11.  She indicated that Powell was the only authorized driver of the vehicle.  <u>See</u> <u>id.</u> at 10.  Additionally, Powell testified in the state court proceedings that, at the time she rented the vehicle, she did not list Defendant as an authorized driver, and Defendant testified that he knew he was not an authorized driver of the rental vehicle.  <u>See</u> Dec. 19th Tr. at 8; Dec. 27th Tr. at 8.  Moreover, unlike in <u>Kye Soo Lee</u>, there is no testimony or other evidence that Defendant possessed a copy of the rental agreement, and Defendant did not have a valid driver's license.  <u>See</u> 898 F.2d at 1035-36, 1038.  Thus, this case is distinguishable from <u>Kye Soo Lee</u>, and that decision does not support a finding, in this case, that Defendant had a legitimate expectation of privacy.  <u>See</u> <u>Seeley</u>, 331 F.3d at 472 n.1.

United States v. Smith, 263 F.3d 571, 586 (6th Cir. 2001);[16] United States v. Edwards, 242

F.3d 928, 936 (10th Cir. 2001); United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994);

United States v. Roper, 918 F.2d 885, 887-88 (10th Cir. 1990); United States v. Boruff, 909

F.2d 111, 117 (5th Cir. 1990); United States v. Obregon, 748 F.2d 1371, 1374-75 (10th Cir.

1984).

In Boruff, the Fifth Circuit concluded, based on a review of the rental agreement, that

the only legal operator of the vehicle was the lessee, and the lessee did not have any

authority to give control of the car to the defendant. See 909 F.2d at 117.  As the defendant

was aware that the rental vehicle could not be used for illegal purposes and that the lessee

was the only authorized driver, the court found that the defendant could not have a

legitimate expectation of privacy in the vehicle.  See id.

Similarly, in Wellons, the Fourth Circuit concluded that permission from the renter of

a vehicle did not equate to permission from the owner of the vehicle.  See 32 F.3d at 119

n.2.  As the defendant in Wellons did not have permission from the owner – the rental car

agency – to operate the vehicle, the court found case law regarding a person's legitimate

---

[16]    In Smith, after conducting a survey of the circuit court decisions on this issue, the Sixth Circuit recognized the general rule that an unauthorized driver does not having standing to challenge the search of a rented vehicle. See 263 F.3d at 583-86.  Nevertheless, the court found that the defendant, despite being an unauthorized driver, had shown that he had a legitimate expectation of privacy based on the particular circumstances in that case, including the fact that the defendant had arranged and paid for the rental car and that his wife signed the contract, picked up the car, and expressly gave the defendant permission to drive it. See id. at 586-87.  The court emphasized that the defendant was a **licensed** driver and that it was not illegal for him to operate the vehicle. See id. at 586.  Based on these unique circumstances and after recognizing the fact that the defendant was "the de facto renter of the vehicle," the court concluded that the defendant had established a legitimate expectation of privacy. Id. at 586-87.  The same unique factual circumstances are not present in this case.  Indeed, unlike the driver in Smith, it was illegal for Defendant to operate the van and he could not have rented the van from Enterprise himself.  Thus, despite Defendant's argument to the contrary, see Tr. at 21-22, the decision in Smith does not support the conclusion that Defendant, in this case, had a reasonable expectation of privacy in the vehicle.

expectation of privacy in a borrowed vehicle to be inapposite.  See id.  The court concluded

that the defendant, "as an unauthorized driver of the rented car, had no legitimate privacy

interest in the car." Id. at 119.

Some decisions from the Eighth and Ninth Circuit Courts of Appeals, on the other

hand, arguably support the conclusion that an unauthorized driver of a rental vehicle, who

has permission from the authorized lessee, can challenge the search of that vehicle.  See

United States v. Thomas, 447 F.3d 1191, 1198-99 (9th Cir. 2006); United States v. Best, 135

F.3d 1223, 1225 (8th Cir. 1998); United States v. Muhammad, 58 F.3d 353, 355 (8th Cir.

1995) (per curiam); see also United States v. Dennis, Criminal Action No. 06-650-01, 2007

WL 2173394, at **5-6 (E.D. Penn. July 27, 2007).  Upon review, however, these decisions

are less persuasive.  For example, in Thomas, the court opined that "an unauthorized driver

who received permission to use a rental car and has joint authority over the car may

challenge the search to the same extent as the authorized renter."  447 F.3d at 1199.  In

reaching this conclusion, the Ninth Circuit specifically relied on its previous decisions

establishing that a holdover lessee and a driver who has permission from the owner to use

a vehicle both have reasonable expectations of privacy.  See id. at 1198.  However, the

Eleventh Circuit, in its decisions on these issues,  explicitly noted a distinction between one

who has permission of the owner or properly rented a vehicle (but breached the contract by

not returning the vehicle as promised) and one who, without authorization from the owner,

simply utilizes the vehicle, albeit with permission from the renter.[17]  See Cooper, 133 F.3d at 1400; Miller, 821 F.2d at 548.

The decisions in Muhammad and Best are similarly unpersuasive.  In Muhammad, the Eighth Circuit concluded that the defendant, an unauthorized driver of a rental vehicle, failed to establish a reasonable expectation of privacy in the vehicle.  See 58 F.3d at 355. Notwithstanding this conclusion, the court suggested that the defendant could have established a reasonable expectation of privacy in the vehicle with testimony that he had permission of the lessee to use that vehicle.  See id.  The court's decision reflects that the parties had agreed on this principle, and that the court did not conduct a fact-based analysis of the Fourth Amendment claim.  See id.  Likewise, in Best, the court suggested, without deciding, that the defendant, an unauthorized and unlicensed driver, may have had a reasonable expectation of privacy in the vehicle by virtue of having received permission from the lessee.  See 135 F.3d at 1225.  However, the court did not decide whether the defendant could challenge the search; instead, it remanded the case to the trial court "for a factual determination [of] whether [the defendant] has standing."  Id.  Thus, although these cases suggest that the deciding courts, with appropriate evidence, would have recognized that the defendants had a legitimate expectation of privacy, despite each being an unauthorized driver, the absence of any analysis of this issue in the decisions renders them of little aid to this Court.

---

[17]      Additionally, in the end, the court in Thomas concluded that the defendant did not have a reasonable expectation of privacy in the vehicle because he failed to establish that he had received permission from the lessee to use the car.  See 447 F.3d at 1199.  Thus, the conclusion regarding the ability of an unauthorized driver with permission of the absent renter to challenge a search of the vehicle appears to be dicta as that precise issue was not before the court.

Upon review, it appears that the weight of authority would support the conclusion that a driver of a rented vehicle who neither rented the vehicle nor is authorized to operate the vehicle by the rental company does not have a legally cognizable expectation of privacy in that vehicle. However, the Court need not decide that issue in this case. The determination of whether a defendant's subjective expectation of privacy is one which society is prepared to recognize as reasonable must be made based upon review and consideration of all relevant factors. Here, the Court is presented with, not only an unauthorized driver of a rented vehicle, but also a driver whose privilege to operate any motor vehicle has been revoked by the state of Florida. This latter factor, which is conspicuously absent from all of the above cases, with (arguably) the exception of Best, decidedly tips the scales in favor of the conclusion that Defendant in the case at bar did not have a reasonable expectation of privacy in the vehicle and cannot challenge the search at issue.

### b.   Unlicensed Driver

Defendant's driver's license was revoked for five years based upon his status as a habitual traffic offender and both he and Powell were aware that he was not allowed to operate the vehicle at issue.[18]  See Gov't Ex. 4; Dec. 19th Tr. at 8; Dec. 27th Tr. at 8. Indeed, Defendant testified in the state court hearing that he knew he was not supposed to be driving the van, and Powell testified that she knew that Defendant did not have a valid driver's license and it would have been impossible to identify Defendant as an authorized

---

[18]     Even Defendant seems to recognize that the fact that he did not have a valid driver's license is relevant to the determination of whether his expectation of privacy was reasonable. See Tr. at 19, 120. He merely concludes that the fact is irrelevant because the Magistrate Judge had already found that he could challenge the search. See id. at 120. However, at the hearing, the Magistrate Judge did not make a determination that Defendant had a reasonable expectation of privacy, but only that Defendant could go forward with the evidentiary hearing. See id. at 28.

driver with Enterprise. <u>See</u> Dec. 19th Tr. at 8; Dec. 27th Tr. at 8.  Thus, unlike in <u>Smith</u>, where the court concluded that, it was not "illegal" for the unauthorized, but properly licensed, driver to operate the vehicle, <u>see</u> <u>Smith</u>, 263 F.3d at 587 ("It was not <u>illegal</u> for [the defendant] to possess or drive the vehicle, it was simply a breach of the contract with the rental company."), it certainly was unlawful for Defendant, an unlicensed <u>and</u> unauthorized driver, to drive or operate the van, <u>see</u> Fla. Stat. § 322.34(5) ("Any person whose driver's license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree . . . .").

In a case very similar to the one at hand, the Seventh Circuit concluded the defendant did not have a reasonable expectation of privacy in the vehicle because he was an unlicensed and unauthorized driver. <u>See</u> <u>United States v. Haywood</u>, 324 F.3d 514, 516 (7th Cir. 2003); <u>see also</u> <u>United States v. Figueroa-Espana</u>, No. 06-4270, 2007 WL 4553645, at *5 (7th Cir. Dec. 28, 2007).  In <u>Haywood</u>, the defendant's girlfriend had rented a car, which she gave the defendant permission to use. <u>See</u> 324 F.3d at 515.  The rental agreement, however, authorized only his girlfriend to drive the car. <u>See</u> <u>id.</u>  The defendant returned home one day, parked the rental car, locked the doors, and proceeded to leave the car when he found two police officers waiting for him. <u>See</u> <u>id.</u>  The officers questioned the defendant, and he admitted that his license had been revoked. <u>See</u> <u>id.</u> The defendant was arrested for driving with a revoked license, and the officers searched the car. <u>See</u> <u>id.</u>  The defendant was first charged in state court and filed a motion to suppress, which was denied for lack of standing. <u>See</u> <u>id.</u>  Thereafter, the state charges were dropped and the defendant was

brought up on federal charges.  See id.  The defendant, again, sought to suppress the evidence obtained from the search of the rental car.  See id.  The district court denied the motion, finding that the defendant did not have a reasonable expectation of privacy in the vehicle.  See id.

The Seventh Circuit affirmed the district court's decision.  See id. at 516.  In doing so, it concluded that the defendant was more than a mere unauthorized driver - he was an unlicensed one, too.  See id.  The court recognized that the defendant "should not have been driving **any** car, much less a rental car that Enterprise never would have given him permission to drive," and it concluded that the defendant's expectation of privacy was, as a result, unreasonable.  Id. (emphasis added).  Like the defendant in Haywood, Defendant was an unauthorized and unlicensed driver.  Defendant's license had been revoked and he was not permitted to operate **any** vehicle; indeed, his operation of any vehicle constituted a felony.  See Fla. Stat. § 322.34(5).  Consequently, as concluded by the Seventh Circuit in Haywood and Figueroa-Espana, in this case, the Court finds, upon consideration of the facts in toto, that society is not prepared to recognize Defendant's expectation of privacy as reasonable.

### c.    Totality of the Circumstances

Defendant has not pointed to any authority that would support a conclusion that an unauthorized **and** unlicensed driver has a traditional and well recognized expectation of privacy in a vehicle driven under the circumstances presented in this case.  Defendant may have been the sole occupant of the vehicle and had possession of the keys when he parked it, see Tr. at 32-34, 54, but these facts are not determinative, see Chaves, 169 F.3d at 691;

Obregon, 748 F.2d at 1374.  In addition, any suggestion that Defendant may have had the right to exclude others, see Chaves, 169 F.3d at 691, is undermined by the fact that Defendant could not have excluded Enterprise, the lawful owner; Powell, the lessee; or any agents or authorities acting on behalf of Enterprise, and the absence of any evidence that Defendant locked the doors when he left the vehicle.  Although Defendant had Powell's permission to use the van, see Dec. 19th Tr. at 6; Dec. 27th Tr. at 8, no testimony was provided as to when this permission was given, for how long, what purpose, or the length of time Defendant had been using the vehicle.  As a result, consideration of Defendant's ability to exclude others does not weigh strongly in favor of recognizing that Defendant had a legitimate expectation of privacy in the van.  Likewise, the fact that Defendant took **some** normal precautions to protect his privacy, like parking his car at a private residence and closing the doors, and that he may have had a subjective expectation of privacy in the vehicle, only minimally support the conclusion that Defendant may have had legitimate expectation of privacy.[19]

More importantly, it is well settled that there is a lesser expectation of privacy in a vehicle altogether, see Rakas, 439 U.S. at 148, and Defendant has not shown that he had a cognizable property, possessory, or ownership interest in the van.  As in Obregon, here the "Defendant made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately."  748 F.2d at 1375; see also Roper, 918 F.2d at 887-88.  In fact, because of the revocation of Defendant's license,

---

[19]     However, Defendant also abruptly parked the vehicle in the backyard of the residence (not the driveway), left one window rolled down and the doors possibly unlocked, and then fled the vehicle as the officer approached.  See Tr. at 32-34, 55-56.

Defendant could not have made _any_ arrangements to operate the vehicle with Enterprise's permission.[20]  See Dec. 19th Tr. at 11.  Thus, this case is unlike Cooper,[21] where "a simple phone call could have extended the rental contract."  133 F.3d at 1402.  Moreover, as mentioned supra, it is also distinguishable from Miller, because Defendant did not have permission from the owner, Enterprise, to use the van.[22]  See 821 F.2d at 548; see also Dec. 19th Tr. at 11.  Although Powell consented to Defendant's use of the vehicle, she could not confer the consent of the owner, Enterprise, in defiance of its policy against allowing unlicensed drivers to operate its vehicles.  Nor could she circumvent Florida's statutory prohibition against Defendant's operation of any vehicle under any circumstances.

Moreover, Defendant's presence in the vehicle as the **driver/sole occupant** was **unlawful**, and, consequently, any expectation of privacy he claims based upon his position as the driver/sole occupant of this vehicle is unreasonable and society would be loathe to recognize such an expectation as legitimate.  Powell, as the lessee, could have given

---

[20]    While Defendant's counsel argued during the evidentiary hearing that, "it is not a crime to drive a car without the permission of the rental agency," he failed to acknowledge that it **was** a crime in this case for Defendant to drive the car because his license had been revoked for five years.  Tr. at 22, 130.  Thus, further undermining Defendant's assertion of a legitimate expectation of privacy in the vehicle.

[21]    As stated supra, this case further differs from Cooper, because in that case, the issue was whether the defendant, while the car was properly within his control and possession, lost his expectation of privacy due to the expiration of the rental agreement.  See 133 F.3d at 1401.  The question in this case is not whether Defendant **lost** his reasonable expectation of privacy based on the rental car company's dormant right of repossession, but whether he **ever** had such an interest to begin with when it was illegal for him to operate the vehicle and he knew that he was not supposed to be driving it.  Additionally, while there was privity of contract between the driver and the rental car company in Cooper, no such privity of contract or even a business relationship exists here.  133 F.3d at 1400; see also Smith, 263 F.3d at 586-87.  Finally, in both Cooper and Miller, there is no indication that the drivers were unlicensed.  See Cooper, 133 F.3d at 1396; Miller, 821 F.2d at 546, 550.

[22]    To the extent Defendant asserts in the Objections that he had a legitimate expectation of privacy "as a driver who uses a vehicle with permission of an absent owner," Objections ¶ 9, that allegation is not supported by the evidence, see Dec. 19th Tr. at 11.

Defendant permission to be "legitimately on the premises" as a passenger. However, it is well settled that solely being a passenger in a car generally does not create a legitimate expectation of privacy in that vehicle to allow the passenger to challenge a search. See Cooper, 133 F.3d at 1398. Indeed, as stated supra, the Supreme Court has recognized that more than a legitimate presence in the vehicle is required to establish a reasonable expectation of privacy. See Rakas, 439 U.S. at 148 (recognizing that "the fact that they were 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched"). Perhaps in recognition of this principle, Defendant seems to suggest that he had a greater expectation of privacy because he was the driver/ sole occupant of the vehicle. This suggestion ignores the fact that Defendant was an **illegal** operator of the vehicle.

The facts presented herein are more analogous to a "burglar plying his trade in a summer cabin" or a driver of a stolen vehicle than an authorized driver of a borrowed vehicle or even a passenger in a vehicle or a holdover lessee. See Rakas, 439 U.S. at 141 n.9, 143 n.12. Indeed, like an operator of a stolen vehicle, Defendant, in this case, is attempting to establish his right to challenge the search solely by virtue of his illegal act – driving the van. See Tr. at 11, 21, 23, 26, 131; see also Objection ¶ 9. The Court declines to find that society is prepared to recognize Defendant's subjective expectation of privacy as reasonable under these circumstances. Defendant also contends that he had a reasonable expectation of privacy by virtue of receiving permission from Powell – an individual whom Defendant knew could not give him permission to operate the vehicle lawfully. See Tr. at 18, 26, 131;

<u>see also</u> Dec. 27th Tr. at 8.  However, Defendant cannot point to any source outside of the Fourth Amendment for the recognition that his expectation of privacy in this case would be reasonable.  Therefore, Defendant has not shown a violation of his personal rights – only an intrusion into the property interest of another.  The fact that Defendant may have been the target of this search does not give him the ability to challenge the legality of the search.  See <u>Rakas</u>, 439  U.S. at 138.

It is not reasonable for Defendant, in this case, to have had an expectation of privacy in this rental vehicle when he knew it was unlawful for him to drive any vehicle and that he did not have permission from the owner, Enterprise, to do so.  The arguments presented by Defendant fail to convince the Court that society is prepared to recognize his alleged expectation of privacy in the van as reasonable.  In reaching this conclusion, the Court does not rely on any single fact.  Rather, it is the totality of the circumstances of this case that convinces the Court that Defendant did not have a legitimate expectation of privacy in the vehicle.

### III.    Conclusion

Upon <u>de novo</u> review of the parties' filings, the transcript of the hearing before the Magistrate Judge, the exhibits received into evidence at the hearing, the Report and Recommendation, as well as the Defendant's Objections and the government's response, the undersigned concludes that the Magistrate Judge's recommendation should be accepted and the Motion to Suppress should be denied.[23]

---

[23]    As explained in detail, <u>supra</u>, the undersigned concludes, upon independent review of the record, that Defendant did not have a reasonable expectation of privacy in the vehicle and therefore cannot challenge the reasonableness of the search.  As the Court finds that Defendant never had a legitimate expectation of privacy in the vehicle, it is not necessary for the Court to consider the other arguments raised

Accordingly, it is hereby **ORDERED**:

1.      Defendant's Objections to Findings of Fact, Conclusions of Law, and Recommendation of Denial of Defendant's Motion to Suppress Evidence (Dkt. No. 41) is **OVERRULED, in part, and DENIED as MOOT, in part**.

2.      The recommendation in the Report and Recommendation (Dkt. No. 40) is **ACCEPTED**, and the Motion to Suppress Physical Evidence and Statements of Defendant (Dkt. No. 27) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 21st day of February, 2008.

**MARCIA MORALES HOWARD**
United States District Judge

lc1
Copies to:

Counsel of Record

---

by the government and Defendant, such as whether Defendant relinquished, waived, or abandoned his expectation of privacy during the course of this incident based on his own actions or the actions of another; whether the search of the vehicle was unreasonable, i.e. whether Gonzalez conducted a valid inventory search; or whether the evidence at issue would have been inevitably discovered. As a result, with the exception of the objections specifically addressed herein, the remaining objections are moot.